IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE SCHOLLE o/b/o, | ) | CASE NO. 3:12CV841 |
| JOHN DAVID SCHOLLE, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KATHLEEN B. BURKE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Charlotte Scholle ("Plaintiff") has brought this action on behalf of John David

Scholle ("Claimant" or "Mr. Scholle"), her deceased son.[1]  Plaintiff seeks judicial review of the

final decision of Defendant Commissioner of Social Security ("Commissioner") denying Mr.

Scholle's applications for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act (the "Act"), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI")

under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*[2]  Doc. 1.  This matter has been referred to

the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule

72.2(b)(1).  For the following reasons, the final decision of the Commissioner should be

**AFFIRMED.**

---

[1] In her Complaint, Plaintiff alleges that, on January 4, 2012, she filed substitution of party request forms with the Appeals Council, requesting that it acknowledge her as the substituted party on appeal.  Doc. 1, ¶ 13.  Plaintiff also requested that the Appeals Council grant her an extension to file a civil action on behalf of Mr. Scholle.  *Id.*  Plaintiff asserts that, by notice dated March 9, 2012, the Appeals Council granted her an extension of time of 30 days to file a civil action.  *Id.* at ¶ 14.  These documents are not contained in the record.  It appears, however, that Plaintiff is a proper party in this case.

[2] Mr. Scholle filed his applications for SSI and DIB in Florida.  Plaintiff resides in Perrysburg, Ohio.  Doc. 1, ¶ 2.  Plaintiff, as the substitute party in this action, commenced this litigation in the Northern District of Ohio.

## I.  Procedural History

On December 15, 2008, Mr. Scholle filed applications for SSI and DIB, alleging a disability onset date of January 10, 2008.  Tr. 93.  Mr. Scholle alleged he was disabled due to a combination of mental problems, including bipolar disorder, manic episodes, and depression.  Tr. 87.  Mr. Scholle's applications were denied initially and on reconsideration, and he thereafter requested a hearing before an administrative law judge.  Tr. 83, 86-92.  On May 25, 2010, a hearing was held before Administrative Law Judge Francis H. Ayer (the "ALJ").  Tr. 23-60.  On July 6, 2010, the ALJ issued a decision finding that Mr. Scholle was not disabled.  Tr. 13-22. Mr. Scholle requested review of the ALJ's decision by the Appeals Council on August 18, 2010. Tr. 9.  On November 22, 2011, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 4-7.

## II.  Evidence

### A.     Background

Mr. Scholle was born on April 16, 1965, and was 42 years old on the alleged disability onset date.  Tr. 93.  Mr. Scholle's past work history includes work as an assistant manager, manager, restaurant host, sales clerk, transportation security officer, and waiter.  Tr. 97.  Mr. Scholle committed suicide on August 20, 2011.[3]  Doc. 16.

### B.     Medical Evidence

#### 1.     Treating Physicians

Mr. Scholle was admitted to Mount Sinai on February 26, 2008, after verbalizing suicidal ideation with plans to overdose on pills.  Tr. 136.  A mental status examination revealed that he appeared sad and depressed and that he had regressed behavior, psychomotor retardation, fair

---

[3] Mr. Scholle's suicide occurred while his claim was pending before the Appeals Council.  His mother, Charlotte Scholle, is the substitute party before this Court.  Doc. 16.

reliability, sad mood, feelings of hopelessness and helplessness, suicidal ideation with death wishes, and moderately impaired judgment and insight. Tr. 136. Mr. Scholle was discharged on March 1, 2008. Tr. 137. Upon discharge, Mr. Scholle was cooperative, calm, and relating well with others; his mood and affect were much brighter; his judgment, insight, and reality testing was much improved; and he denied any suicidal or homicidal ideation or plans. Tr. 138. His diagnoses were major depressive disorder and history of alcohol abuse and dependency. Tr. 138.

Mr. Scholle began treatment with Miguel David Ramirez, M.D., a psychiatrist, on May 21, 2008, and saw Dr. Ramirez on a monthly basis. Tr. 260. At his initial appointment, Mr. Scholle reported suffering from depression and anxiety for years with a suicide attempt in February 2008. Tr. 260. Mr. Scholle admitted to a history of alcohol abuse but reported that he had not used in the past 86 days. Tr. 261. A mental status examination showed that Mr. Scholle was cooperative, with normal speech, an appropriate affect, a normal mood, intact thought processes, intact thought content, no hallucinations, no homicidality, normal attention span/concentration, intact judgment, good insight, and full orientation. Tr. 263. Dr. Ramirez further noted that Mr. Scholle had "good ADL's [activities of daily living]." Tr. 264. He diagnosed bipolar disorder, anxiety disorder, alcohol dependence in partial remission, and personality disorder. Tr. 264.

Mr. Scholle saw Dr. Ramirez for a follow-up appointment on June 12, 2008. Tr. 259. Mr. Scholle reported that his mood was "pretty good," that everything was okay most of the time, and that he had no mood swings. Tr. 259. A mental status examination revealed an anxious affect and fair impulse control. Tr. 259. Dr. Ramirez assessed Mr. Scholle as "stable and compliant." Tr. 259. He prescribed Abilify, Lamictal, Campral, and Cymbalta. Tr. 259. At his next monthly appointment on July 14, 2008, Mr. Scholle reported having days when he felt

anxious and restless.  Tr. 258.  Mr. Scholle denied suicidal or homicidal ideas.  Tr. 258.  The mental status examination was unchanged and Dr. Ramirez renewed Mr. Scholle's medications. Tr. 258.

Mr. Scholle saw Dr. Ramirez on August 11, 2008.  Tr. 257.  He stated that he was not doing good and had decreased energy.  Tr. 257.  Mr. Scholle also stated that he could not find a job and had financial problems.  Tr. 257.  Dr. Ramirez found that Plaintiff was "not suicidal." Tr. 257.  Mr. Scholle reported that he was sober for six months.  Tr. 257.  A mental status examination showed that Mr. Scholle had appropriate appearance and normal memory, thought processes, cognition, psychomotor activity, judgment, insight, and appetite.  Tr. 257.  His affect was depressed but appropriate.  Tr. 257.

On September 8, 2008, Mr. Scholle presented to Dr. Ramirez for a follow-up appointment.  Tr. 256.  Mr. Scholle stated that he was feeling tired and that he was sleeping for 12-14 hours per day.  Tr. 256.  He stated that he was also having anxiety attacks.  Tr. 256.  A mental status exam revealed an anxious affect, feelings that people were following him, auditory/visual hallucinations, poor concentration, short attention span, fair impulse control, and superficial judgment.  Tr. 256.  At the next appointment on October 7, 2008, Mr. Scholle stated that he felt "edgy" and had continued to be paranoid about other people.  Tr. 255.  His mood was depressed and anxious, his affect was anxious, he had paranoia, superficial judgment, and partial insight.  Tr. 255.  Again he denied any suicidal or homicidal ideas.  Tr. 255.  At a follow-up appointment on November 4, 2008, Mr. Scholle told Dr. Ramirez that he was "feeling better." Tr. 254.  He stated that he was not having any relationship problems with his boyfriend and he had "good response" to his medications with no side effects.  Tr. 254.  Mr. Scholle reported that he had been sober for nine months and continued to attend AA meetings.  Tr. 254.

4

Mr. Scholle saw Dr. Ramirez on December 2, 2008, and reported that his mood was "pretty good" and that his depression "comes and goes."  Tr. 253.  At an appointment on January 6, 2009, Mr. Scholle told Dr. Ramirez that "everything is good."  Tr. 252.  He reported that he had quit smoking and was not having mood swings.  Tr. 252.  On February 3, 2009, Dr. Ramirez reported that Mr. Scholle was having a good response to medications and that he had a good relationship with his boyfriend.  Tr. 251.  At an appointment on March 3, 2009, Dr. Ramirez again reported that everything was good, that Mr. Scholle had a good response to medications, that he was compliant, that he had no medical problems, that he was clean and sober, that he was sleeping 7-8 hours per night, that he had no mood swings, and that he had a good relationship with his boyfriend.  Tr. 250.

Mr. Scholle had a follow-up appointment with Dr. Ramirez on April 2, 2009.  Tr. 249. He reported that things had been "terrible" but stated "today I am fine."  Tr. 249.  Mr. Scholle explained that he had relapsed in March 2009 and used drugs, but that he stopped using after one week.  Tr. 249.  He stated that the trigger for his relapse was that his boyfriend was using drugs. Tr. 249.  Mr. Scholle reported "relational problems" with his boyfriend.  Tr. 249.  On April 30, 3009, Mr. Scholle stated that he was doing better since his medications were changed.  Tr. 248. He reported he was "feeling pretty good" but was still having issues with his boyfriend.  Tr. 248.

Mr. Scholle saw Dr. Ramirez on May 28, 2009.  Tr. 315.  He stated that he was "feeling pretty good" but was having financial problems.  Tr. 315.  Mr. Scholle explained that his relationship with his boyfriend was good and that his boyfriend had stopped using drugs.  Tr. 315.  Mr. Scholle said he was not having mood changes and was "pretty even."  Tr. 315.  He also reported that he had no violent behavior and was sleeping well.  Tr. 315.  At a follow-up on July 2, 2009, Mr. Scholle stated that he was "feeling better," sleeping well, and not drinking.  Tr. 314.

5

He reported feeling "a little bit depressed." Tr. 314. On July 30, 2009, Mr. Scholle told Dr. Ramirez that he felt "pretty good." Tr. 313.

Mr. Scholle visited Dr. Ramirez again on September 14, 2009, at which time he reported that he had run out of medication and that his mind was racing and he felt anxious. Tr. 312. However, Mr. Scholle denied suicidal ideation and did not have disorganization of thought. Tr. 312. Dr. Ramirez restarted Mr. Scholle's medications.

On March 11, 2010, Dr. Ramirez completed a "Psychiatric/Psychological Impairment Questionnaire." Tr. 304-311. He diagnosed bipolar disorder, anxiety disorder, alcohol related disorder, and a personality disorder. Tr. 304. Dr. Ramirez assigned Mr. Scholle a Global Assessment of Functioning ("GAF") Score of 52.[4] He opined that Mr. Scholle was markedly limited in the following mental activities:

- the ability to understand and remember one or two step instructions;
- the ability to carry out detailed instructions;
- the ability to maintain attention and concentration for extended periods;
- the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance;
- the ability to work in coordination or proximity to others without being distracted by them;
- the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
- the ability to interact appropriately with the general public;
- the ability to accept instructions and respond appropriately to criticism from supervisors;
- the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes;
- the ability to respond appropriately to changes in the work setting; and
- the ability to set realistic goals or make plans independently.

Tr. 307-09. Dr. Ramirez also found that Mr. Scholle experienced episodes of deterioration or

---

[4] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

decompensation in work or work-like settings that caused him to withdraw from that situation and/or experience an exacerbation of signs and symptoms as evidenced by his social isolation. Tr. 309.  Dr. Ramirez stated that Mr. Scholle is not a malingerer.  Tr. 310.  He also opined that Mr. Scholle would likely be  absent from work more than three times a month. Tr. 311.  Dr. Ramirez concluded that Plaintiff was incapable of tolerating even low stress work.  Tr. 310-11.

### 2.      State Agency Physicians

On September 2, 2008, Mr. Scholle underwent a consultative psychological evaluation by Juan M. Patterson-Vazquez, Psy.D.  Tr. 244-47.  Mr. Scholle stated that he was unable to concentrate at tasks and suffered from mood swings, worsening since December 2007.  Tr. 244. He also stated that he had been abusing alcohol for twenty years prior to his inpatient hospitalization six months earlier.  Tr. 245.  Mr. Scholle reported that he did not have homicidal or suicidal ideation.  Tr. 245.  Mr. Scholle reported that he spent his days at home, occasionally watching television.  Tr. 245.  He stated that he was able to take care of his own personal hygiene and grooming.  Tr. 245.  He also reported that he did household chores, including buying groceries, preparation of meals, and cleaning.  Tr. 245.  Mr. Scholle's mood and affect were depressed but he maintained good eye contact with Dr. Patterson-Vazquez, his speech flow was adequate and goal-directed, and he was not incoherent, tangential, or circumstantial.  Tr. 246.  Moreover, Mr. Scholle no longer had auditory hallucinations, as he had prior to being hospitalized.  Tr. 246.  Dr. Patterson-Vazquez opined that Mr. Scholle appeared able to follow and retain simple instructions and that his interactions during the examination were satisfactory. Tr. 246.  Dr. Patterson-Vazquez also stated that it would be in Mr. Scholle's "best interest to continue his mental health care to help him deal with alleged disorder symptoms."  Tr. 247.  He diagnosed major depressive disorder with psychotic features by history versus bipolar disorder,

and alcohol abuse in full early remission. Tr. 247.

On May 28, 2009, state agency psychologist, Wendy Silver, Psy.D., reviewed the medical evidence and completed a Mental Residual Functional Capacity Assessment form ("MRFCAF") and a Psychiatric Review Technique form ("PRTF"). Tr. 267-70, 271-83. In the PRFT, Dr. Silver opined that Mr. Scholle had mild limitations in his activities of daily living; mild limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 281. In Section I of the MRFCF, the "Summary Conclusions" section, Dr. Silver found that Mr. Scholle had moderate limitations in seven out of 20 mental functioning categories: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) working in coordination with or proximity to others without being distracted by them; (5) completing a normal workday or workweek without interruptions from psychologically based systems and performing at a consistent pace without an unreasonable number of rest periods; (6) accepting instructions and responding appropriately to criticism from supervisors; and (7) setting realistic goals or making plans independently of others. Tr. 267-68. She nonetheless opined in Section III of the MRFCF that Mr. Scholle could understand, remember, and carry out simple tasks and instructions. Tr. 269. She further opined that, while there is some decrease in concentration, Mr. Scholle could attend to, and complete, simple tasks in routine settings, as needed. Tr. 269.

On August 27, 2009, a second state agency psychologist, Lee Reback, Psy.D., reviewed the medical evidence and completed a MRFCF and a PRTF. Tr. 285-88, 289-302. In the PRTF, Dr. Reback found that Mr. Scholle had mild limitations in his activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration,

persistence, or pace; and no episodes of decompensation.  Tr. 299.  In Section I of the MRFCF, the "Summary Conclusions" section, Dr. Reback found that Mr. Scholle had moderate limitations in six out of 20 mental functioning categories: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) completing a normal workday or workweek without interruptions from psychologically based systems and performing at a consistent pace without an unreasonable number of rest periods; (5) interacting appropriately with the general public; and (6) responding appropriately to changes in the work setting.  Tr. 285-86.  Nevertheless, in Section III of the MRFCF, Dr. Reback concluded that Mr. Scholle appeared capable of daily and routine activities from a psychological perspective.  Tr. 287.

## C.      Administrative Hearing

### 1.      Mr. Scholle's Testimony

On May 25, 2010, Claimant appeared with counsel and testified at a hearing before the ALJ.  Tr. 32-39.  Mr. Scholle stated that the medication Dr. Ramirez prescribed worked for him because it lessened his mood swings and made the racing thoughts in his head "not as loud."  Tr. 32.  He testified that he was able to function "okay" while on the medication and when he was at home and doing his "regular routine things."  Tr. 33.  He also stated that he stopped working in January 2008 because "things were spiraling."  Tr. 33.  Mr. Scholle reported a history of quitting his job at least four times and that he had terrible attendance before he quit.  Tr. 33.  He testified that he finally became so depressed that he could not continue working at all.  Tr. 34.

Mr. Scholle testified that he continued to have racing thoughts and that he could not sit still for very long.  Tr. 34.  He stated that attending the administrative hearing was very aggravating for him and made him nervous and very anxious.  Tr. 34.  Mr. Scholle also testified

that he had been stressed since moving from Miami, Florida, to Clearwater, Florida.  Tr. 35.

During the day, Mr. Scholle stated that he watched TV, read, and did chores, but that his racing

thoughts affected his concentration and that he could not finish things that he had started.  Tr. 36.

He also discussed how he had self-medicated with alcohol in the past.  Tr. 35.  Mr. Scholle

reported drinking alcohol heavily because it helped calm his racing thoughts and stated that he

self-medicated until he was told that he had to stop drinking.  Tr. 35.  He stated that medication

did not help control his symptoms as much as alcohol did.  Tr. 38.

###### 2.    Vocational Expert's Testimony

William Harvey (the "VE") appeared at the hearing and testified as a vocational expert.

Tr. 27-32, 39-52.  He testified that Mr. Scholle worked as a store manager (a skilled position at

the light exertional level), a sales clerk (a semi-skilled position at the light exertional level), a

waiter/hostess (a semi-skilled position at the light exertional level), and a security officer (a

semi-skilled position at the light exertional level).  The ALJ asked the VE to consider the

limitations set forth in Dr. Silver's assessment on a hypothetical person's ability to perform

simple, routine work activity.  Tr. 27.  In doing so, the ALJ specifically explained that Dr. Silver

had found moderate limitations in several areas and asked the VE to assume that those moderate

limitations existed with regard to the hypothetical person.  Tr. 27.  The VE responded that the

moderate limitations would not eliminate simple, routine, repetitive tasks.  Tr. 27.  The VE

further testified that the moderate limitations set forth in Dr. Reback's assessment would not

change his opinion.  Tr. 28.

The ALJ then asked the VE to assume an individual of Mr. Scholle's age, education, and

past work experience, who could perform the full range of physical work activity but was limited

to performing only simple, routine tasks in a low stress work environment where there would be

only occasional contact with coworkers and supervisors, and no contact with the general public. Tr. 29-30.  In response, the VE testified that the hypothetical individual could not perform Mr. Scholle's past relevant work but could perform other jobs that existed in significant numbers in the national economy, including automobile detailer (31,000 jobs nationally, 1,500 jobs in Florida, and 250 jobs locally), horticulture worker (67,000 jobs nationally, 3,000 jobs in Florida, and 400 jobs locally), and farm worker (250,000 jobs nationally, 10,000 jobs in Florida, and 600 jobs locally).  Tr. 30.  In addition, after much discussion, the VE testified in summary that moderate mental limitations become vocationally significant when there are multiple moderate limitations that reach a point that a typical employer would not tolerate.  Tr. 54-55.

### III.  Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).  In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV.  The ALJ's Decision

The ALJ determined that Mr. Scholle met the insured status requirements of the Act through December 31, 2012.  Tr. 15.  At Step One of the sequential analysis, the ALJ determined that Mr. Scholle had not engaged in substantial gainful activity since January 10, 2008, the alleged onset date.  Tr. 15.  At Step Two, he found that Mr. Scholle had the following severe impairments: bipolar disorder and a history of alcohol abuse.  Tr. 15.  At Step Three, the ALJ found that Mr. Scholle did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1.[5]  Tr. 16.

---

[5]  The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration

The ALJ then determined Mr. Scholle's RFC and found that he could perform a full range of work at all exertional levels but with the following non-exertional limitations: "He is limited to simple routine tasks in a low stress work environment where there would only be occasional contact with co-workers and supervisors and no contact with the general public."  Tr. 16.  At Step Four, the ALJ found that Mr. Scholle could not perform his past relevant work.  Tr. 20. Finally, at Step Five, after considering his vocational factors, RFC, and the evidence from the VE, the ALJ found that Mr. Scholle was capable of performing work that existed in significant numbers in the national economy.  Tr. 21.  Thus, the ALJ concluded that Mr. Scholle was not disabled.  Tr. 22.

## V.  Arguments of the Parties

Plaintiff objects to the ALJ's decision on three grounds.  First, Plaintiff asserts that the ALJ failed to follow the treating physician rule in evaluating the opinion of Mr. Scholle's treating psychiatrist.  Second, Plaintiff contends that the ALJ did not properly evaluate Mr. Scholle's credibility.  Third, Plaintiff argues that the ALJ erred under Step Five of the sequential analysis because he relied upon flawed vocational expert testimony.

In reply, the Commissioner asserts that substantial evidence supports the ALJ's determination that Mr. Scholle could perform simple, unskilled work with only superficial social interaction.  The Commissioner also argues that substantial evidence supports the ALJ's Step Five determination that Mr. Scholle could perform other work that existed in significant numbers in the national economy.

---

considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

## VI. Law & Analysis

### A.      Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B.      The ALJ Properly Evaluated the Opinion of Mr. Scholle's Treating Physician

Plaintiff argues that the ALJ failed to follow the treating physician rule in evaluating the opinion of Dr. Ramirez, Mr. Scholle's treating psychiatrist.  Doc. 16, p. 8.  Specifically, Plaintiff contends that the ALJ's assignment of "minimal probative weight" to Dr. Ramirez's opinion is not supported by substantial evidence.  Doc. 16, pp. 9-15.  Contrary to this argument, the undersigned concludes that the ALJ properly evaluated Dr. Ramirez's opinion, as well as the record as a whole, and reasonably determined that Mr. Scholle could perform simple, unskilled

work with only superficial social interaction. In reaching this determination, the ALJ properly evaluated the opinion of Dr. Ramirez in accordance with the treating physician rule.

Under the treating physician rule, the opinion of a treating source is entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion of a treating source is not accorded controlling weight, an ALJ must consider certain factors in determining what weight to give the opinion, such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion. *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(d), 416.927(d).

If an ALJ assigns less than controlling weight to a treating source's opinion, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *Wilson*, 378 F.3d at 544. However, the ALJ is not obliged to set forth a detailed analysis with respect to each and every one of the factors listed above. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x. 802, 804 (6th Cir. 2011); *Allen v. Commissioner of Social Security*, 561 F.3d 646, 651 (6th Cir. 2009) (even a "brief" ALJ statement identifying such factors will be found adequate to articulate "good reasons" to discount a treating physician's opinion).

As discussed above, Dr. Ramirez opined that Mr. Scholle had marked limitations in numerous mental activities. Tr. 307-09. He also opined that Mr. Scholle would likely be absent

from work more than three times a month. Tr. 311.  Dr. Ramirez then concluded that Mr. Scholle

was incapable of tolerating even low stress work.  Tr. 310-11.

To the extent Dr. Ramirez opined that Mr. Scholle was unable to work, the ALJ's failure

to give any weight to such a determination is not error, as a medical source's conclusion that a

claimant is "unemployable" does not constitute a medical opinion, and, therefore, is not entitled

to any special weight.  A medical source's statement on an issue reserved for the Commissioner,

such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and

not a medical opinion.  20 C.F.R. § 416.927(e).  Such statements are not entitled to any special

deference.  20 C.F.R. § 416.927(e)(3).  "The determination of disability is ultimately the

prerogative of the Commissioner, not the treating physician."  *Warner v. Comm'r of Soc. Sec.,*

*375 F.3d 387, 390 (6th Cir. 2004).*

The ALJ evaluated the remainder of Dr. Ramirez's opinion, as well as the record as a

whole, and reasonably assigned limited weight to the opinion.  The ALJ explained that he gave

only limited weight to Dr. Ramirez's opinion because: (1) it was not well supported by Dr.

Ramirez's own objective findings and other medical evidence of record; (2) it was inconsistent

with Dr. Ramirez's clinical records; (3) it was inconsistent with Mr. Scholle's wide range of

daily activities; and (4) it was inconsistent with Mr. Scholle's testimony at the administrative

hearing, where he admitted that medications helped with his symptoms.  Tr. 19.  The ALJ

therefore stated good reasons for assigning less than controlling weight to Dr. Ramirez's opinion

and fulfilled his obligations under the regulations.  *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561

*F.3d 646, 651 (6th Cir. 2009)* (finding that an ALJ provided good reasons for discounting

treating physician opinion where the ALJ's stated reason was brief but reached several of the

factors an ALJ must consider when determining what weight to give non-controlling opinion);

*Bledsoe v. Barnhart*, 2006 WL 229795, at *4 (6th Cir. 2006) ("The ALJ reasoned that Dr. Lin's conclusions are 'not well supported by the overall evidence of record and are inconsistent with other medical evidence of record.' This is a specific reason for not affording controlling weight to Dr. Lin.").

A review of the record reveals that the reasons provided by the ALJ for discounting Dr. Ramirez's opinion are supported by substantial evidence. Dr. Ramirez saw Mr. Scholle on a monthly basis and contemporaneously documented Mr. Scholle's mental status and functioning during the relevant time period. Dr. Ramirez's treatment notes consistently show that Mr. Scholle was cooperative, had normal speech, had appropriate affect and normal mood, had no mood swings, had intact thought processes, had intact thought content, had no hallucinations, was not suicidal or homicidal, had a normal attention span, had normal concentration, had intact judgment, had good insight, was fully oriented, and had good activities of daily living. Tr. 248, 250-52, 257, 259-60, 263-64, 313-16, 318-20, 325, 327-28, 331-32. In addition, on December 2, 2008, Mr. Scholle reported that his mood was "pretty good" and that his depression "comes and goes." Tr. 253. The treatment notes also show that Mr. Scholle reported to Dr. Ramirez that "everything is good" and that he was sleeping well and having a good relationship with his boyfriend. Tr. 250, 252, 315, 318, 320. And, Mr. Scholle acknowledged at the administrative hearing that the medication Dr. Ramirez prescribed lessened his mood swings and calmed his racing thoughts. Tr. 32. This evidence is inconsistent with the severe limitations found by Dr. Ramirez in his March 2010 assessment and supports the ALJ's determination that Mr. Scholle was not psychiatrically disabled.

Further, the reviewing and consulting physicians all opined that Mr. Scholle's mental impairments did not rise to a disabling level. Agency regulations provide that state agency

reviewing sources are highly skilled medical professionals who are experts in social security issues.  *See* 20 C.F.R. § 416.927.  Dr. Patterson-Vazquez, the consulting psychologist, opined that Mr. Scholle was able to follow and retain simple instructions.  Tr. 246.  He did not conclude that Mr. Scholle was unable to work due to his mental impairments.  In addition, state agency reviewing psychiatrist Dr. Silver opined that Mr. Scholle had mild limitations in his activities of daily living; mild limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation.  Tr. 281.  However, Dr. Silver opined that, despite these limitations, Mr. Scholle could understand, remember, and carry out simple tasks and instructions.  Tr. 269.  She also opined that, while there was some decrease in concentration, Mr. Scholle could attend to, and complete, simple tasks in routine settings, as needed.  Tr. 269.  Similarly, state agency reviewing psychologist Dr. Reback opined that Mr. Scholle had only mild limitations in his activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation.  Tr. 299.  Dr. Reback concluded that Mr. Scholle appeared capable of daily and routine activities from a psychological perspective.  Tr. 287.  This evidence also supports the ALJ's determination that Mr. Scholle could perform simple, unskilled work with only superficial social interaction.

Finally, as noted by the ALJ, Mr. Scholle was able to perform a wide range of daily activities.  Tr. 19.  Mr. Scholle reported that he took care of his personal hygiene, cared for his dogs, watched television, prepared meals, did household chores, and did the laundry.  Tr. 36, 106-07.  He also reported that he could drive short distances and take public transportation.  Tr. 106-07.  He further stated that he could shop independently and that he goes to the pharmacy.  Tr. 106-07.  The ability to perform these activities contradicts the severe limitations found by Dr.

Ramirez and lends support to the ALJ's conclusion that Mr. Scholle could perform some work.

All of this evidence supports the ALJ's determination that Mr. Scholle could perform work. Plaintiff, however, cites to other evidence in the record and argues that this evidence shows that Mr. Scholle was more impaired than found by the ALJ. Tr. 10-15. Even if there is evidence to support Plaintiff's position, the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citation omitted). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* at 773 (citations omitted). In this case, the ALJ reviewed the entire record, weighed the evidence, and concluded that Mr. Scholle retained the ability to perform simple, unskilled work with only superficial social interaction. Even assuming there is evidence in the record that supports Plaintiff's claim that Mr. Scholle was more limited than found by the ALJ, substantial evidence also supports the ALJ's conclusion that Mr. Scholle could perform some work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ," the Commissioner's decision cannot be overturned). Based on the applicable standard of review set forth above, the ALJ's decision should be affirmed.

**C.    The ALJ Properly Evaluated Mr. Scholle's Credibility**

Plaintiff contends that the ALJ erred in finding that Mr. Scholle's testimony regarding his mental impairments was not fully credible. Doc. 14, pp. 10-12. In this regard, Plaintiff asserts that the proffered reasons given by the ALJ were insufficient to reject Mr. Scholle's testimony concerning the debilitating effects of his mental impairments. Contrary to this argument, the

19

ALJ properly evaluated the entire record and reasonably concluded that Mr. Scholle's subjective complaints were not fully credible.

A disability claim can be supported by a claimant's subjective complaints as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. § 404.1529(c)(3)). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in assessing the credibility of an individual's subjective statements about his or her symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Id.*. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.* The ALJ should consider the following factors in evaluating a claimant's symptoms:

1) the individual's daily activities;
2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
3) factors that precipitate and aggravate the symptoms;
4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.; see also* 20 C.F.R. §§ 404.1529(c) and 416.929(c); Social Security Rule ("SSR") 96-7p,

1996 WL 374186, *3.

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones,* 336 F.3d at 476 (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997).  It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247.  If the ALJ rejects a claimant's testimony as not being credible, the ALJ must state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight. *See Cross v. Comm'r of Soc. Sec*., 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); Social Security Rule ("SSR") 96-7p, 1996 WL 374186, *2.

In this case, the ALJ recognized that Mr. Scholle had a number of serious limitations caused by his mental impairments and accounted for these limitations in his RFC determination by limiting Mr. Scholle to simple, unskilled work with only superficial social interaction.  Tr. 16-19.  The ALJ concluded, however, that Mr. Scholle's claim that he could not perform any work whatsoever because of the severity of his symptoms was not credible.  Tr. 19.  In reaching this determination, the ALJ provided several reasons for discounting Mr. Scholle's credibility.  The ALJ stated that Mr. Scholle's mental impairments were present at approximately the same level of severity prior to the alleged onset date as they were after the alleged onset date, and that the impairments did not prevent Mr. Scholle from working prior to the onset date.  Tr. 19-20.  The ALJ found that Mr. Scholle's ability to work despite his mental impairments before the alleged

21

onset date "strongly suggested" that Mr. Scholle was not prevented from working after his alleged onset date. Tr. 19-20. In addition, the ALJ found that inconsistencies in the medical evidence, the conservative nature of the Mr. Scholle's treatment, and his activities of daily living, all contradicted his claims of completely disabling limitations. Tr. 19-20. *See* SSR 96-7p, 1996 WL 374186, at *3 (credibility analysis should include consideration of, among other things, the objective medical record, the claimant's daily activities, the effectiveness of medication, and treatment received). As such, the ALJ provided several reasons for discounting Mr. Scholle's credibility and his analysis indicates that he considered the relevant factors under 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p.

The ALJ credited Mr. Scholle with pain and limitations from his medically determinable impairments but also found, based on substantial evidence in the record, that the limiting effects of those impairments were not as severe as Mr. Scholle alleged and did not preclude all work. As such, the ALJ reasonably concluded that Mr. Scholle was not fully credible in alleging an incapacity for all sustained work activity. The ALJ's credibility determination is therefore entitled to deference. *See, e.g., Cross v. Commissioner of Social Sec.,* 373 F.Supp.2d 724, 733 (N.D. Ohio 2005) (finding that the ALJ need not analyze all seven factors identified in the regulations).

**D.      The ALJ Satisfied the Commissioner's Burden at Step Five of the Sequential Analysis**

In her last argument, Plaintiff asserts that the ALJ did not satisfy the Commissioner's burden at Step Five because he relied on testimony of the VE that was in response to an incomplete hypothetical. Doc. 13, pp. 18-20. Specifically, Plaintiff contends that the ALJ's hypothetical did not accurately reflect Mr. Scholle's moderate limitations in maintaining concentration, persistence or pace, or his moderate limitations in maintaining social functioning.

22

Doc. 19, p. 16-20.  These arguments are without merit.

Once it has been determined that a claimant cannot perform his past relevant work, the burden shifts to Commissioner at Step Five to show that there are other jobs that exist in significant numbers in the economy that the claimant can perform, consistent with his or her RFC and vocational factors of age, education and work experience.  *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).  To satisfy this burden, the ALJ may rely on the testimony of a vocational expert as long as it is in response to a hypothetical that accurately reflects the claimant's physical and mental limitations.  *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987).  In formulating the hypothetical, the ALJ only needs to incorporate those limitations he accepts as credible.  *See* C*asey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ concluded at Step Three that Mr. Scholle had a moderate limitation in concentration, persistence, and pace.  This limitation was not further addressed when the ALJ discussed and established Mr. Scholle's RFC.  In his discussion of the medical opinion evidence in the RFC analysis, the ALJ gave great weight to the opinions of the state agency reviewing psychologists.  Tr. 20.  As discussed above, Dr. Silver opined that Mr. Scholle had moderate limitations in maintaining concentration, persistence, or pace.  Tr. 281.  Despite these moderate limitations, Dr. Silver opined that Mr. Scholle could understand, remember, and carry out simple tasks and instructions.  Tr. 269.  She also opined that, while there was some decrease in concentration, Mr. Scholle could attend to, and complete, simple tasks in routine settings, as needed.  Tr. 269.  Dr. Reback similarly opined that Mr. Scholle was moderately limited in maintaining concentration, persistence, or pace.  Tr. 299.  He also opined that Mr. Scholle had moderate difficulties in maintaining social functioning.  Tr. 299.  However, Dr. Reback

concluded that, despite these limitations, Mr. Scholle was capable of daily and routine activities from a psychological perspective.  Tr. 287.

During the administrative hearing, the ALJ asked the VE to consider the limitations set forth in Dr. Silver's MRFCF on a hypothetical person's ability to perform simple, routine work activity.  Tr. 27.  In doing so, the ALJ specifically pointed out that Dr. Silver had found moderate limitations in several areas and asked the VE to assume that those moderate limitations existed with regard to the hypothetical person.[6]  Tr. 27.  The VE responded that the moderate limitations would not eliminate simple, routine, repetitive tasks.  Tr. 27.  The VE also testified that the moderate limitations set forth in Dr. Reback's MRFCF would not change his opinion.  Tr. 28.  The ALJ then specifically posed a question to the VE describing a hypothetical person who retained the ability to perform "only simple, routine tasks in a low stress work environment where there would be only occasional contact with coworkers and supervisors, and no contact with the general public."  Tr. 29-30.  The VE testified that the limitations would not preclude all work and then identified several jobs that the hypothetical individual could perform.  Tr. 30.  The ALJ incorporated these hypotheticals in his RFC determination, in which he found that Mr. Scholle could perform a full range of work at all exertional levels but was limited to simple routine tasks in a low stress work environment where there would be only occasional contact with co-workers and supervisors and no contact with the general public. Tr. 16.

Plaintiff cites *Ealy v. Commissioner of Social Security,* 594 F.3d 504 (6th Cir. 2010), to support the argument that the ALJ was required specifically to express in his hypothetical that Mr. Scholle was moderately limited in his abilities to maintain concentration, persistence, or

---

[6] As discussed above, the limitations set forth by Dr. Silver included moderate limitations in the category of sustained concentration and persistence.

pace, and that he had moderate limitations in social functioning. [7]  However, as set forth above, the ALJ did in fact include these limitations in his hypothetical.  Upon questioning by the ALJ, the VE specifically considered the assessments of the state agency reviewing physicians and explained that the moderate limitations set forth in those assessments would not preclude simple, routine, repetitive tasks.  Based on this colloquy, the ALJ adequately accounted for all of Mr. Scholle's limitations in his hypotheticals to the VE. [8]

Further, to the extent Plaintiff argues that, under *Ealy*, the ALJ was required to include specific speed and pace-based restrictions in his hypothetical, such an argument is unpersuasive because the present case is distinguishable from *Ealy*.  In *Ealy*, the state agency psychological consultant specifically limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Ealy*, 594 F.3d at 516.  However, the ALJ's hypothetical to the VE omitted those speed and pace-based restrictions entirely.  *Id.*  Because the Sixth Circuit found that the hypothetical should have included those restrictions, it held that the hypothetical questions did not fully and

---

[7] Contrary to the suggestion by Plaintiff, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but fails to expressly refer to a moderate limitation in concentration.  Rather, the Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision.  *See, e.g., Taylor v. Commissioner of Social Sec.*, No. 10–cv–12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011).

[8] Plaintiff cites two reports and recommendations issued by the undersigned, *Titus v. Astrue*, No. 1:10CV2923, 2011 WL 6986793 (N.D. Ohio Dec. 15, 2011) and *Daniels v. Astrue*, No. 1:11CV00806, 2012 WL 3309664 (N.D. Ohio May 7, 2012), in support of her argument that remand is appropriate in this case.  However, both of those cases are distinguishable from the case at bar.  In *Titus*, the ALJ did not include any limitations on concentration, persistence, or pace in his hypothetical to the VE, even though he found at Step Three that Titus had moderate limitations in concentration, persistence, or pace.  By contrast, the ALJ in this case specifically asked the VE to consider the moderate limitations set forth by the state agency physicians in their reports, which included the moderate limitation on concentration, persistence, or pace.  In *Daniels*, the ALJ did not include any limitations on concentration, persistence, or pace in his hypothetical to the VE.  However, on cross examination, the attorney for Daniels did include limitations on persistence and pace in his hypothetical, as well as other, unrelated limitations.  The VE responded that, with the additional limitations, the jobs she had previously identified that Daniels could perform would be eliminated.  The ALJ did not incorporate the hypothetical asked by counsel into his RFC determination and did not otherwise account for Daniels' moderate limitations in concentration, persistence, or pace.  In this case, the ALJ did ask the VE to consider the moderate limitations set forth by the state agency physicians and relied upon the VE's opinion testimony – that, despite these limitations, Mr. Scholle could perform simple, routine, repetitive tasks – in determining Mr. Scholle's RFC.

accurately convey the claimant's limitations to the VE. *Id.*

By contrast, none of the limitations set forth by the state agency physicians in this case was as restrictive as the consultant's opinion in *Ealy*.  Dr. Silver opined that, although Mr. Scholle showed "some" decrease in concentration, he could still attend to, and complete, simple tasks in routine settings, as needed.  Likewise, Dr. Reback did not give any specific limitations on Mr. Scholle's abilities to maintain concentration, persistence, or pace.  He opined that Mr. Scholle was capable of daily and routine activities.  The limitations expressed in the ALJ's hypotheticals — the ability to perform simple, routine tasks in a low stress work environment where there would be only occasional contact with coworkers and supervisors, and no contact with the general public — adequately account for the opinions of the state agency physicians. *See Infantado v. Astrue,* 263 F. App'x 469, 477 (6th Cir. 2008) ("The hypothetical questions [the ALJ] asked of the vocational expert could have been more complete, but we do not find that they inaccurately portrayed [the] plaintiff's substantiated limitations."); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 010) (upholding ALJ's hypothetical question that limited a claimant with moderate deficiencies of concentration, persistence, or pace to simple unskilled work where the claimant failed to explain why the facts of his particular case required a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace).

In sum, Plaintiff has not shown any error in the hypothetical questions the ALJ posed to the VE.  The ALJ's reliance on the VE's testimony was therefore proper and such testimony constitutes substantial evidence in support of the ALJ's Step Five determination.

## VII. Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner should be

**AFFIRMED.**

Dated: February 28, 2013

_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).